# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Eun Joo Bae ) <br> on behalf of herself and all other ) <br> Plaintiff similarly situated known and unknown, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Seoul Supermarket Inc. and Suk Hui Park ) <br> ) <br> ) <br> Defendants. ) | Case No. 15-cv-05782 <br><br> Judge Honorable Sharon Johnson <br><br> Magistrate Judge Young B. Kim |

## **MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendants Seoul Supermarket Inc, and Suk Hui Park, by and through their attorney, Amy Elizabeth Paluch Epton, move for an Order enforcing the settlement agreement between the parties, which was effectuated on September 6, 2016, and state as follows:

1. The parties engaged in settlement negotiations through the auspices of Magistrate Judge Young B. Kim. These negotiations formally ended on July 21, 2016.

2. The negotiations described in paragraph 1 ended after a formal tender of a final written agreement by Defendants, on July 20, 2016, covering all the material terms of the lawsuit.

3. Plaintiff's attorney Ryan Kimn ended the negotiations because of a dispute over one of the non-monetary terms of the agreement. Plaintiff declined this final agreement. [It is not at all clear that Plaintiff actually knew at the time of the reason for the failure of the agreement, or whether it was simply the attorney who

1

declined]

4. On September 6, 2016, Plaintiff Eun Joo Bae sent a text message to Defendants' General Manager, Helen Kwak, saying she wanted to talk. Therefore Ms. Kwak telephoned her. (**Ex. A** Declaration of Helen Kwak, ¶

5. Plaintiff then told Ms. Kwak in this telephone conversation, and in two subsequent telephone conversations, that she had changed her mind and wished to settle for the terms in the final written offer given by Defendants on July 20, 2016. Defendants agreed in all of these conversations to reopen and extend the final offer.

6. The details of all three telephone conversations between Plaintiff and Helen Kwak are provided in the attached **Exhibit A.** The gist of all three conversations was that Plaintiff strongly desired to settle the lawsuit for the terms of Defendants' July 20, 2016 final written offer. The telephone calls confirming Plaintiff's desire to settle for the terms of the final written offer, and Defendants' agreement to extend the offer occurred on September 6, 2016; November 10, 2016, and November 14, 2016.

7. Meanwhile, through repeated emails between the two sets of attorneys, Plaintiff's attorney Ryan Kim refused to acknowledge his client's desire to settle for the written terms already discussed between Ms. Bae and Defendants' agent Helen Kwak, and issued two new settlement demands for greatly increased amounts of payment from Defendants to Plaintiff. Plaintiff told Helen Kwak that she was not aware of these increased payment demands, and said that she did not desire them.

8. Plaintiff said that when she first filed the lawsuit, she was very upset, because her attorney represented to her that Defendants had cheated her out of a large amount of money. However, now Plaintiff says she regrets the lawsuit, and

2

regrets the trouble she has caused to all of her friend/fellow employees and to Defendants; following the settlement Magistrate Judge's explanation of how little money Defendants apparently owed her. Plaintiff is apparently willing to come to Court to testify to all of the statements in this paragraph. (**Ex. A ¶ ?o**

## AUTHORITY

Courts clearly have the power to enforce agreements entered into by the parties to settle litigation. *Carr v. Runyan,* 89 F.3d 327 (7th Cir. 1996). Whether settlement agreements are enforceable is determined by reference to state law. *See Elustra v. Mineo,* 595 F.3d 699 (7th Cir. 2010); *see also Dillard v. Starcon Intern, Inc.,* 483 F.3d 502, 506 (7th Cir. 2007) ("[T]here has been 'uncertainty' in circuit case law 'over whether state or federal law would govern a suit to enforce a settlement of a federal suit' but that the 'uncertainty' has been dispelled; it is state law.")

Under both federal and Illinois state law, an oral agreement to settle a lawsuit is enforceable. *Taylor v. Gordon Flesch Co., Inc. .,* 793 F.2d 858, 862 (7th Cir. 1986); *Pritchett v. Asbestos Claims Management Corp.,* 332 Ill.App.3d 890, 896 (2002). Courts apply ordinary contract construction rules when interpreting settlement agreements. *Id.* An oral agreement to settle a lawsuit is binding and enforceable if there is an offer, acceptance and a meeting of the minds regarding the material or essential terms of the agreement. *McAllister v. Hayes,* 165 Ill.App.3d 426, 427. See also, Abbott Labs v. Alpha Therapeutic Corp., 164 F.3d 385,387 (7th Cir. 1999). "Ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract", *Pritchett* at 897, 266 Ill.Dec. 207, 773 N.E.2d 1277,

citing *Wilson v. Middendorf,* 248 Ill.App.3d 870, 872, 188 Ill.Dec. 815, 619 N.E.2d 179 (1993). "Under Illinois law '[a] contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.'" *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (citing *Academy Chicago Publishers v. Cheever,* 144 Ill.2d 24, 161 Ill.Dec. 335, 337, 578 N.E.2d 981, 983 (1991)) "A meeting of the minds exists whenever the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more parties did not subjectively intend to be bound." *County Line Nurseries & Landscaping, Inc., ex rel. Bankr. Tr. v. Glencoe Park Dist.*, 2015 IL App (1st) 143776, ¶ 33, 46 N.E.3d 925, 932 (citations omitted). Illinois follows the objective theory of intent, and thus whether the parties had a "meeting of the minds" is determined not by their subjective intent, such as internal thought processes or "secret hopes and wishes," but by what they expressed "to each other and to the world." *Zendejas v. Reel Cleaning Services, Inc.*, 05 C 6933, 2009 WL 2431299, at *9 (N.D. Ill. Aug. 6, 2009) (citations omitted).

**ARGUMENT**

The parties clearly have an enforceable settlement here. All of the terms of the settlement are set out in a clearly written "form" agreement. The only one who does not agree to the settlement is Plaintiff's attorney, who has (apparently without his client's knowledge), greatly increased the amount of the payment demand and effectively filed a third motion for class certification, in this lawsuit in which there are less than 15 employees – none of which has elected to join the case in the year and a half since the case's inception. As Defendants explained in their Response to Plaintiff's Second Motion for Class Certification, Plaintiff's unliquidated damages amount to only $2,400 – 20 hours per week, times 24 weeks, times $5.00

4

per hour[1]. Defendants' July 20, 2016 settlement demand already generously rewards Plaintiff's attorney with an amount deemed fair by the Magistrate Judge. Plaintiff's attorney seeks more than double the amount the Magistrate Judge stated was fair and reasonable.

The ability to agree on settlement of this lawsuit clearly belongs solely to Plaintiff, and not to her attorney. Plaintiff's attorney should not be allowed to hold this Court and Defendants hostage to his desire for a larger payment.

WHEREFORE, Defendants respectfully request that this Honorable Court enforce the written settlement agreement of July 20, 2016, as desired by both Plaintiff and Defendants.

By:

                                          /s/ Amy E. Paluch Epton 11/15/2016
                                          One of the Defendants' Proposed Attorneys

Amy Elizabeth Paluch-Epton, Esq.
MIRAE LAW, LLC.
1701 GOLF ROAD, SUITE 1-1106
Rolling Meadow, IL 60008
(847) 297-4224
amy@epton.org

---

[1] Plaintiff's attorney agrees to the number of hours per week and the number of weeks. However, he demands $7.50 per hour, instead of $5.00 per hour – or $3,600. This is based on an out-of-circuit method of overtime calculation, and not the Seventh Circuit's method of the calculation of overtime.